UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA

v.

S5 15 CR. 379 (PKC)

OTTO SALGUERO MORALES

Defendant
-------------------------------------------------------------x

**DEFENDANT OTTO SALGUERO MORALES'REPLY**
**MEMORANDUM IN SUPPORT RANDOM CASE REASSIGNMENT**

**INTRODUCTION**

The Government's Opposition to the defendant's Motion For Case Reassignment can be distilled down to the following two arguments: (1) any criminal case can be considered part of the same conspiracy and designated "superseding," even if there is only *de minimis* overlap between the prosecutions; and (2) the decision to designate a case as superseding is within the sole and unreviewable discretion of the United States Attorneys' Office.

The Government's position is contrary to the well-established rule that multiple conspiracies exist notwithstanding that there is "some overlap in time, place and participants," particularly when "these similarities are far outweighed by the differences in operations, overt acts and objectives of the two conspiracies. . . . ." United States v. Macchia, 845 F.Supp. 953, 959 (E.D.N.Y.1994), *affirmed*, 35 F.3d 662 (2d Cir. 1994). Moreover, with respect to the line of cases filed under criminal number 15 Cr. 379, the prosecutors have designated - and failed to designate - cases as superseding with no apparent consistency. This undercuts the principle that the assignment of criminal cases must be "random" and creates the unmistakable appearance of manipulation. Notably, the Government did not respond with any particularity to the defense

claim that by designating this case as superseding it also received a tactical advantage in the litigation.

The Government's argument that the defendants have no standing to challenge the superseding designation should likewise be rejected. Local Rule 6(e) provides not only that this Court can Order the Government to explain the decision to designate cases as "superseding," but specifically authorizes an appeal of that decision. This is an endorsement of the existence of judicial review of the superseding designation.

Finally, the Court *sua sponte* invited counsel to explain the delay in filing the motion for case reassignment. In that regard, as a matter of professional responsibility, the defense waited to file the instant motion until after the trial of Giovanni Fuentes concluded on March 22, 2021 to be certain that there was no other discovery or evidence in the record that would indicate the case against Otto Salguero Portillo was "superseding" to the prior prosecutions. At the time the motion was filed, there was no deadline set by the Court for the filing of pre-trial motions as the discovery process was still ongoing and defense counsel had been severely hampered in his ability to consult with his client because of the pandemic. The delay was not intended to gain any tactical or legal advantage in this case.

## LEGAL ANALYSIS

### 1. The S5 Indictment Against Otto Salguero Morales Is Not A Superseding Case

The Government alleges that from 2004 to 2019, defendant Otto Salguero Morales was involved in a conspiracy to unlawfully import cocaine into the United States. In its Opposition to the motion for case reassignment, the Government relies upon the testimony of only one witness – Alexander Ardon Soriano – to connect Salguero Morales to the prior indictments. Ardon-Soriano was the only witness (in either the Tony Hernandez or Giovanni Fuentes trial) who has

ever mentioned either Otto or Ronald Salguero.[1] In substance, Ardon-Soriano testified that between 2007 and 2013 he was involved in dispatching cocaine from Honduras to Ronald and Otto Salguero in Guatemala. The Salgueros were then allegedly involved in moving the cocaine into Mexico and onward toward the United States. This testimony is the sole, slender reed between Otto Salguero and all of the other indictments in this line of cases. And yet, it is undisputed that Ardon-Soriano is charged in a completely separate conspiracy case that is pending before Judge Englemayer.

The Government's explanation for why Ardon-Soriano is charged in a separate case before a different judge in this district is that "the Government learned details of the Conspiracy and Ardon-Soriano's own role through his cooperation." *See* DE 340 at p. 14. That representation is apparently at odds with law enforcement reports previously provided to counsel for co-defendant Ronald Salguero-Portillo, which indicated that Devis Leonel Maradiaga ("Cachiro") had spoken about the relationship between Ardon-Soriano and Tony Hernandez long before Ardon was indicted. Similarly, defendant Victor Hugo Diaz-Morales, who is charged in the original 15 Cr. 379 Indictment, arrived in the United States in approximately August 2017 and pled guilty pursuant to a cooperation plea agreement with the United States in August 2019. During Diaz-Morales' testimony at the Tony Hernandez trial, he explained to the jury that Alexander Ardon-Soriano was the mayor of the town or El Paraiso, Honduras and that he was the leader of a drug trafficking organization that moved large cocaine shipments from Honduras to Guatemala. See Tr. 10/3/2019 at pp. 123-24. These two witnesses were both cooperating with

[1] The Government's Opposition notes that it has "not yet disclosed the identities of all of the witnesses whom the Government would call at the as-of-yet unscheduled trial [of the Salgueros] or the substance of those anticipated witnesses' anticipated testimony." *See* DE 340 at p.16. Even assuming *arguendo* that there is some other direct testimony against Otto Salguero Morales, it is of no consequence in the resolution of the pending motion because the Government has not made it part of the record before this Court.

the United States long before Ardon-Soriano was indicted in January 2019. The same prosecutors were assigned to all of these cases. It thus seems entirely likely that the Government knew of Ardon-Soriano's connection to the existing line of cases before this Court before he surrendered.

But even if the Government did not "fully understand" Ardon-Soriano's role in the conspiracy until he arrived in the United States, that does not explain either: (1) why Ardon-Soriano was not subsequently charged in the 15 Cr. 379 line of cases; or more importantly (2) why Otto Salguero Morales was. The Government's explanation as to why Devis Leonel Maradiaga was charged in a separate case is likewise problematic and reflects that there are, at best, inconsistent standards for determining when cases are deemed superseding. [2] In the final analysis, however, it is clear that the connection between the alleged conduct of Otto Salguero and the other defendants in the 15 Cr. 379 line of cases is ephemeral at best and that the charges against him are part of a separate conspiracy.

The mere fact that drug traffickers operate in the same geographic area, or indeed, have similar overarching goals, does not automatically make them part of one grand, complex conspiracy. In the context of determining whether conspiracies exist, the Court should consider the following factors:

---

[2] The Government avers in its Opposition that the case against Maradiaga, which is pending before Judge Koeltl, has been closed "save for the sentencing" since 2018, which is to say, that the case remains open and pending on the court's docket. *See* DE 340 at pp. 12-12. Since Maradiaga surrendered in January 2015, after pro-actively cooperating with the DEA, there seems to be no principled reason why the line of cases now pending before this Court were not designated as superseding to that case. Moreover, since Maradiaga surrendered, there have been two other indictments brought by the prosecutors in this jurisdiction that directly reference those defendant's relationship with Maradiaga's drug trafficking organization (known as the *Cachiros*), but are pending before different judges and were not designated as superseding. In *United States v. Midence Martinez Turcios*, 18 Cr. 499 the Government charged a former Honduran legislator with being a member of the *Cachiros* drug trafficking organization. Notwithstanding the direct connection, that prosecution is before Judge Kaplan. Similarly, in *United States v. Arnaldo Urbina Soto,* et al, 18 Cr. 297, the Government charged that the three defendants worked with drug trafficking organizations in Honduras, specifically including the *Cachiros*, to transport cocaine in Honduras with the goal of illegal importation into the United States. That case is currently pending before Judge Cote.

> (1)the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

United States v. Korfant, 771 F.2d 660, 662 (2d Cir.1985). In United States v. Macchia, 845 F.Supp. 943 (E.D.N.Y. 1994), the district court concluded (and the Court of Appeals affirmed) that two separate conspiracies existed in the New York Metropolitan area to avoid the payment of gasoline taxes. Although there was overlap between the members of the conspiracy, the court noted that they operated with "relative independence" and that each conspiracy had its own "full complement of players" and did not indicate that "one could not operate without the other." 845 F.Supp. at 957-959. The district court thus concluded that:

> under the totality of the circumstances, notwithstanding that there is some overlap in time, place and participants of the two conspiracies , and both indictments charged conspiracy to evade federal gasoline excise taxes, these similarities are far outweighed by the differences in operations, overt acts and objectives of the two conspiracies, and the relative independence of the two conspiracies . The similarities do not alter this Court's determination that the two conspiracies appear to be distinct as a matter of law and fact.

Id. at 959.

In this case, although the defendants in each of the superseding criminal cases had the same goal: the importation of cocaine into the United States – they accomplished their acts independent of one another, in different countries, and during different alleged time frames. Thus, Tony Hernandez (S2), Mario Calix (S3), and Giovanni Fuentes (S5) all worked in Honduras moving cocaine north to Guatemala. Victor Diaz-Hugo (S1) worked in Guatemala and according to his testimony at the Tony Hernandez trial, used a trafficker named Juancho Leon – not the Salgueros – to move cocaine over the border from Guatemala to Mexico. See Tr. 10/3/2019 at p.104.

Moreover, the trial testimony confirms that the success of the overall object of the conspiracy was not dependent on the involvement of the Salgueros. According to the Government's Opposition to defendant Giovanni Fuentes' Motion For A New Trial, he worked with a veritable army of co-defendants – but in the two pages the Government devoted to identifying them – there is no mention of Otto Salguero Morales. See DE 338 at pp. 25-26. It is the case that the defendants indicted in the separate superseding indictments in this line of cases worked independently and at best, on an *ad hoc* basis. That set of facts does not make them members of the same, universal drug trafficking conspiracy. Indeed, taken to its illogical extreme, the Government's theory would permit the prosecutors to indict any Honduran, Guatemalan, or Mexican drug traffickers working to import cocaine into the United States in this line of cases.

Under the totality of circumstances, the Government has not shown that the charges in the superseding indictment brought against Otto Salguero Morales are sufficiently connected to the prior cases.

2. **Even Assuming *Arguendo* That The Defendant Must Show Prejudice Designating This Case As Superseding Provides The Government With A Distinct Tactical Advantage**

In its decision in *United States v. Hoey*, S3 11 Cr. 337 (PKC), this Court denied a motion for case reassignment, noting that the defendant failed to show any prejudice. The Government asserts in its Opposition that the cases relied upon by the defense "establish at most" that in order to prevail on a motion for case reassignment, the defendant must show some prejudice.

As an initial matter, the defense does not concede that such a showing is necessary. Local Rule 6(e) states simply that questions concerning the designation of a superseding indictment shall be decided by the judge assigned to the case. The plain language of the Rule does not

require any showing of prejudice. In the case of *United States v. Gerard*, No. 87-00177, 1987 WL 18400 (E.D. Pa. Oct. 7, 1987), the district court ordered a random case reassignment because the superseding indictment was not sufficiently connected to the original case to warrant assignment to the same judge. The *Gerard* decision did not turn on prejudice to the defendant, rather it was a violation of the court rules of case assignment. The grand jury is constituted in the name and under the auspices of the District Court. See United States v. Christian, 660 F.2d 892, 897-99 (3d Cir. 1981)("federal courts possess inherent power to convene grand juries"). A violation of the local rules by the Government by itself is a challenge to the orderly administration of justice and a sufficient basis to justify the random reassignment of this case.

Even assuming *arguendo*, however, that a showing of prejudice is required, in this case, the Government's unilateral decision to designate the Indictment against Otto Salguero as "superseding" provides it with significant tactical advantages. First, under the "relation back" rule, the Government can argue that the statute of limitations in this case was tolled when the original indictment against Diaz-Morales was filed on June 17, 2015. The only evidence of record in this case concerning Otto Salguero Morales' participation in the drug conspiracy was the testimony of Ardon-Soriano, who explained that the Salgueros received drug shipments from 2007 until 2013, or six years before the indictment was returned in this case. Thus the superseding designation gives the Government an enormous legal and tactical benefit in any argument concerning statute of limitations. This is particularly significant in this case where a substantial legal issue is raised by the return of an indictment six years after a defendant ceased working in an alleged conspiracy.

Second, under the federal hearsay exception, the Government would have a presumption of admissibility in favor of any statement made by any of the other charged defendants in this

line of cases. This would obviate the need for the Government to make any preliminary showing to admit the hearsay. See, e.g., United States v. Saneaux, 365 F.Supp. 2d 493 (S.D.N.Y. 2005)(not permitting prosecution to introduce hearsay statements until the requirements of Federal Rule of Evidence 801(d)(2)(E) during the trial).

Third, the designation of this case as superseding would provide the Government with automatic venue in the Southern District of New York because under the venue statute for crimes committed outside of the United States, venue lies where the first defendant is "brought or arrested." See United States v. Yousef, 327 F.3d 56, 114-115 (2d Cir. 2003)(pursuant to 18 U.S. Code Section 3238 venue is proper in the Southern District of New York for joint defendants when first defendant arrested there). Although in this case Otto Salguero Morales voluntarily surrendered (and waived a challenge to venue), the Government could not have known that when it summarily deemed this case to be superseding.

Thus, even if some showing of prejudice is a prerequisite for a defendant to request random case reassignment, that burden has been met in this case.

**3. There Was No Unreasonable Delay In Filing The Motion For Case Reassignment**

This Court invited the defense to explain the delay between the defendants' initial appearance in this case and the filing of the motion for case reassignment. In summary, the defense was not in a position to determine whether such a motion would be appropriate until after the conclusion of the Giovanni Fuentes trial.

The first significant discovery production in this case was made by the Government on or about January 14, 2021. This production included the discovery provided in the Tony Hernandez case as well as the trial exhibits and transcripts. As the Court may recall, co-defendant Ronald Salguero Portillo filed a motion to compel discovery on February 17, 2021.

See DE 246. Thereafter, on April 22, 2021, the Government indicated that it was making available the discovery from the Giovanni Fuentes trial.

After reviewing the totality of these materials, on April 29, 2021, undersigned filed the instant Motion For Random Case Reassignment on the court's docket. See DE 322. This is the first time undersigned has ever filed a motion for case reassignment and before doing so, it was appropriate for the defense to consider the entirety of circumstances in this case. As previously noted, the motion for reassignment is not a suggestion that this Court is not completely neutral and impartial in this case. Rather, as a matter of professional responsibility the defense believes that the Government should not be permitted to utilize its power to designate cases as superseding to gain obvious tactical advantages, without challenge.

**CONCLUSION**

For all of these reasons, the defense respectfully requests that the Motion For Case Reassignment be granted. The defense also requests the opportunity to address the Court directly at an oral argument on the motion.

Respectfully submitted

*Robert Feitel*

Robert Feitel
1300 Pennsylvania Avenue, N.W.
Washington, DC 20008
#190-515
(202) 450-6133 (office)
(202) 255-6637 (cellular)
RF@RFeitelLaw.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the Electronic Filing System, this 14th day of June, 2021 to Assistant United States Attorneys Benjamin Schrier, Kyle Wirshba, and Jason Richmond, 1 St. Andrews Plaza, New York, N.Y and to Linda George, counsel for defendant Ronald Salguero.

*Robert Feitel*

________________________________

Robert Feitel