UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

OTTO RENE SALGUERO MORALES,
   a/k/a "Otto Salguero," and

RONALD ENRIQUE SALGUERO PORTILLO,
   a/k/a "Ronald Salguero,"

                                         Defendants.

S5 15 Cr. 379 (PKC)


# THE GOVERNMENT'S OPPOSITION TO THE
# DEFENDANTS' MOTIONS FOR BILLS OF PARTICULARS


AUDREY STRAUSS
United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Jason A. Richman
Kyle A. Wirshba
Benjamin Woodside Schrier
Assistant United States Attorneys
   *Of Counsel*

# **TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................ 1

   I. The Public Testimony and the Charges ...................................................................... 1

   II. Discovery and Correspondence with the Defense ..................................................... 4

   III. The Defendants' Requests ......................................................................................... 5

DISCUSSION ............................................................................................................................ 6

   I. The Defendants Are Not Entitled to a Bill of Particulars ............................................ 6

      A. Applicable Law .................................................................................................... 6

      B. Discussion ............................................................................................................. 8

      C. Otto Salguero's Request for *In Camera* Review Is Baseless ............................... 13

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                                         **Page(s)**

*Brady v. Maryland*,
    373 U.S. 83 (1963) ........................................................................................................... 7

*Giglio v. United States*,
    405 U.S. 150 (1972) ......................................................................................................... 7

*United States v. Alessi*,
    638 F.2d 466 (2d Cir. 1980) ........................................................................................... 14

*United States v. Campo Flores*,
    15 Cr. 765, 2016 WL 5946472 (S.D.N.Y. Oct. 12, 2016) ......................................... 10, 13

*United States v. Cimino*,
    31 F.R.D. 277 (S.D.N.Y. 1962) ....................................................................................... 8

*United States v. Dames*,
    380 F. Supp. 2d 270 (S.D.N.Y. 2005) ............................................................................. 7

*United States v. Davidoff*,
    845 F.2d 1151 (2d Cir. 1988) ......................................................................................... 10

*United States v. D'Amelio*,
    683 F.3d 412 (2d Cir. 2012) ........................................................................................... 15

*United States v. Fruchter*,
    104 F. Supp. 2d 289 (S.D.N.Y. 2000) ........................................................................... 14

*United States v. Gotti*,
    2004 WL 32858 ......................................................................................................... 7, 13

*United States v. Guerrero*,
    669 F. Supp. 2d 417 (S.D.N.Y. 2009) ........................................................................... 12

*United States v. Jimenez*,
    824 F. Supp. 351 (S.D.N.Y. 1993) ................................................................................. 8

*United States v. Lobo, et al, 15 Cr. 174*,
    2017 WL 1102660 (S.D.N.Y. Mar. 22, 2017) .............................................................. 10

*United States v. Mollica*,
  849 F.2d 723 (2d Cir. 1988) .............................................................................................. 15

*United States v. Rosenthal*,
  793 F.2d 1214 (11th Cir.) ................................................................................................... 9

*United States v. Santiago*,
  174 F. Supp. 2d 16 (S.D.N.Y. 2001) ................................................................................ 13

*United States v. Teman*,
  465 F. Supp. 3d 277 (S.D.N.Y. 2020) .............................................................................. 15

*United States v. Whyte*,
  630 F. App'x 104 (2d Cir. 2015) ...................................................................................... 15

*United States v. Wedd*,
  No. 15 Cr. 616, 2016 WL 1055737 .............................................................................. *passim*

**Other**

Fed. R. Crim. P. 7(f) ................................................................................................................ 8
Fed. R. Crim. P. Rule 16 ..................................................................................................... 6, 7
18 U.S.C. § 963 ....................................................................................................................... 4
18 U.S.C. § 924 ............................................................................................................. *passim*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

- v. -

OTTO RENE SALGUERO MORALES,
   a/k/a "Otto Salguero," and

RONALD ENRIQUE SALGUERO PORTILLO,
   a/k/a "Ronald Salguero,"

                      Defendants.

S5 15 Cr. 379 (PKC)

---

      The Government respectfully submits this memorandum of law in opposition to the defendants' pretrial motions for bills of particulars (the "Motions") related to their possession and attempted possession of firearms and destructive devices, as well as conspiracy to do the same. (Dkt. 363, 364.) The defendants' Motions should be denied. The discovery produced to the defendants, as augmented by supplemental disclosures, court filings, and other publicly available materials, has provided the defendants and counsel with more than enough information to avoid unfair surprise in these proceedings. In considering a similar motion for a bill of particulars in *United States v. Juan Antonio Hernandez Alvarado*, this Court denied the motion under circumstances in which Hernandez had far less information about the charges, conspiracy, and witnesses as compared to the defendants here. (*See* Dkt. 70 at 10.)

## BACKGROUND

### I. The Public Testimony and the Charges

      The Government will establish at trial that the defendants were large-scale drug traffickers who facilitated the transportation of thousands of kilograms of cocaine moving through Central America on their way to the United States. The evidence will show that, to aid in this effort, the

1

defendants used, aided and abetted the use of, and conspired to use firearms to protect their narcotics trafficking activities.

Prior to their arrest, the defendants controlled ranches, or "*fincas*," located on the Honduras-Guatemala border. These properties served as major transshipment points between Honduran drug traffickers who received cocaine over air and maritime routes from Colombia and Venezuela, and the Mexican traffickers responsible for bringing the cocaine into the United States. Many aspects of this scheme were described in detail at the public trial of Juan Antonio Hernandez Alvarado, a/k/a "Tony Hernandez," at which Government cooperating witness Amilcar Alexander Ardon Soriano ("Ardon") testified. Ardon testified that, starting in 2004, he and Honduran drug traffickers Miguel Arnulfo Valle-Valle and Luis Valle-Valle (the "Valle Brothers") began bringing large quantities of cocaine to the defendants' ranch in the town of Los Amates, in the Izabel Department of Guatemala. (Trial Transcript ("Tr."), *United States v. Juan Antonio Hernandez Alvarado*, 15 Cr. 379 (PKC), at 382.) Ardon described that the Valle Brothers had an employee, Tono Frontera, with whom Ardon trafficked cocaine to the defendants. (Tr. 382.) Ardon also testified that the defendants worked with members of the Sinaloa Cartel. In particular, Ardon described that he and the defendants worked with the Sinaloa Cartel's leader Joaquín Guzmán, a/k/a "El Chapo," and a number of El Chapo's employees, including Amado Beltran Beltran, a/k/a "Don Amado," and Fernando Felix Rodriguez, a/k/a "Don Fernando" (Tr. 383), the other defendants charged in the S5 Superseding Indictment (the "Indictment") who remain at large.

According to Ardon, he made approximately monthly or bimonthly trips to deliver cocaine to the defendants' Guatemala properties for the ultimate benefit of Mexican traffickers and the Sinaloa Cartel. (Tr. 386.) From approximately 2010 to 2012 alone, each trip involved the transport of hundreds to over 1,000 kilograms of cocaine. (Tr. 386.) Ardon described that these cocaine

loads were transported in cattle trucks and dump trucks, the latter of which were capable of transporting approximately 750 kilograms of cocaine per truck. (Tr. 386-87.)

Ardon also described specific cocaine loads that he brought to the defendants and particular meetings he attended with the defendants. For example, Ardon testified that in early 2010, he transported 280 kilograms of cocaine on behalf of Tony Hernandez, which arrived in Honduras by helicopter. (Tr. 409.) Ardon told the jury that the helicopter was registered with an "N," meaning it was registered in the United States. (Tr. 412.) He also testified that he brought his workers, who provided security with automatic machine guns and a bazooka. (Tr. 412-13.) Ardon recalled accepting the cocaine when it arrived by helicopter and loading it, with the help of his employees, into a double-cabin pickup trick. (Tr. 412) Ardon next said that he took the cocaine with his armed workers to Los Amates, where the defendants and Don Amato of the Sinaloa Cartel took possession of the cocaine load. Ardon also described a 2011 shipment of 700 kilograms that he received from Tony Hernandez in Honduras by boat. Ardon testified that he transported that cocaine to the defendants and Don Amado in Los Amates.

Regarding meetings he attended with the defendants, Ardon described a 2013 meeting on a ranch belonging to the Valle Brothers in El Espiritu, Santa Rosa, Honduras. (Tr. 446.) Ardon arrived at the meeting with Tony Hernandez along with security that included Honduran police officers carrying machine guns. (Tr. 445-47.) In attendance at the meeting were Ardon, the defendants, El Chapo, Tony Hernandez, Don Amado, the Valle Brothers, and other narcotics traffickers. (Tr. 447-48.) At the meeting, El Chapo and Tony Hernandez discussed that if Hernandez's brother Juan Orlando Hernandez won the election for the Honduran presidency, Hernandez could provide security for cocaine shipments being transported from Nicaragua to the Guatemalan border. (Tr. 447-49.)

Later in 2013, Ardon met again with the defendants, El Chapo, and other drug traffickers at Ardon's residence in El Paraiso, Honduras. (Tr. 449-50.) Ardon recalled that Hernandez brought with him a bodyguard carrying a machinegun. (Tr. 450-51.) During the meeting, at Ardon's dining room table, Hernandez reiterated that he could provide security for cocaine shipments through Honduras if his brother won the Honduran presidential election. (Tr. 451-52.) On this occasion, El Chapo gave Hernandez $1,000,000 in cash as a contribution to Juan Orlando Hernandez's campaign for the Honduran presidency. (Tr. 451-53.) Ardon also testified to seeing other members of the conspiracy with weapons, including Tony Hernandez (Tr. 366) and his cousin known as "Primo" (Tr. 420, 423).

As a result of their conduct, the defendants are charged in the Indictment with three counts that carry a total mandatory minimum sentence of 40 years' imprisonment:

- Count One: Participating in a conspiracy to import cocaine into the United States, to manufacture and possess cocaine with intent to distribute it in the United States, and to distribute cocaine on board United States-registered aircraft, in violation of Title 21, United States Code, Section 963;

- Count Two: Using and carrying machineguns and destructive devices during and in relation to Count One, and possessing machineguns and destructive devices in furtherance of Count One, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 924(c)(1)(B)(ii); and

- Count Three: Participating in a conspiracy to use and carry machineguns and destructive devices during and in relation to Count One, and to possess machineguns and destructive devices in furtherance of Count One, in violation of Title 18, United States Code, Section 924(o).

## II. Discovery and Correspondence with the Defense

In October 2020, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, the Government provided trial transcripts and admitted exhibits from Tony Hernandez's trial. In January 2021, the Government provided to the defendants the same discovery materials that the Government produced previously to Tony Hernandez,


including extractions of Hernandez's cellphones and electronic messages from one of Hernandez's co-conspirators. On April 22, 2021, the Government provided Drug Enforcement Administration reports about consensual recordings made by cooperating witnesses Devis Leonel Rivera Maradiaga and/or Javier Eriberto Rivera Maradiaga during the course of the investigation into the charged conspiracy. At that time, the Government also reproduced documentation from the defendants' surrender that had been already provided to Mr. Feitel upon their surrender when he represented both defendants. On April 28, 2021, the Government provided, at the defendants' request, the discovery from *United States v. Geovanny Fuentes Ramirez*, S6 15 Cr. 379 (PKC).

In addition to this discovery, the Government has engaged extensively with the defendants, both in writing and on the phone. As acknowledged by counsel for Otto Salguero, these discussions have included clarification that "there will be evidence that weapons were possessed at the Salgueros' farm in Los Amates, Guatemala." (Dkt. 364 at 2.)

Since the inception of this case, counsel for the defendants have repeatedly requested Jencks Act material, despite the lack of a trial date. In light of safety concerns regarding the Government's witnesses, and the Government's ongoing investigations into certain individuals discussed by its witnesses, the Government has declined to provide Jencks Act materials well in advance of when it is obligated to do so, but has committed to providing those materials a sufficient amount of time before trial to ensure that the defendants have adequate time to prepare their defense.

### III. The Defendants' Requests

Each defendant moves for a bill of particulars relating specifically to the use of firearms alleged in Counts Two and Three of the Indictment. Ronald Salguero requests, for each possession of firearms or destructive devise that the Government intends to introduce at trial, the date, place,

and manner of possession, the type of firearm or destructive device, the associated narcotics activity, the "number of person(s) with whom R. Salguero is alleged to have had direct contact in the commission of each such act," and the "manner in which the presence of the [firearm or destructive device] furthered the drug trafficking crime." (Dkt. 363 at 8-16.)

Otto Salguero requests "(1) the dates the weapons were allegedly possessed; (2) the location where the weapons were allegedly possessed; (3) the type of weapons allegedly possessed; and (4) whether the Government alleges that the possession was actual and/or constructive." (Dkt. 364 at 1.) In addition, Otto Salguero asks "that the Court order the Government to also submit an under seal summary of the evidence admitted with respect to this issue before the grand jury that returned the Indictment in this case, so as to memorialize and preserve the factual record for potential appellate review." (Dkt. 364 at 5-6.)

## DISCUSSION

### I. The Defendants Are Not Entitled to a Bill of Particulars

The Indictment describes the Government's theory of the case, and the Government's discovery productions have substantially exceeded the requirements of Rule 16 of the Federal Rules of Criminal Procedure. The defendants' Motions seek to require the Government to go further still. But the information demanded is not required by Rule 16 or necessary to adequately prepare a trial defense. Accordingly, the defendants' Motions should be denied.

#### A. Applicable Law

A bill of particulars is "required 'only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'" *United States v. Wedd*, No. 15 Cr. 616, 2016 WL 1055737, at *3 (S.D.N.Y. Mar. 10, 2016) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). This is so because "[t]he purpose of the bill of particulars

is to avoid prejudicial surprise at trial and give [a] defendant sufficient information to meet the charges against him." *Id.* Thus, "a bill of particulars is not a discovery device and should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense." *United States v. Yun Lee*, No. 13 Cr. 290, 2013 WL 4889178, at *1 (S.D.N.Y. Sept. 9, 2013). "Nor is the proper scope and function of a bill of particulars to obtain disclosure of evidence or witnesses to be offered by the government at trial." *United States v. Dames*, 380 F. Supp. 2d 270, 274 (S.D.N.Y. 2005).

Ordering bills of particulars are required only insofar as necessary to facilitate *reasonable* defense preparation and to avoid *unfair* surprise at trial makes sense. The Government has a legitimate and weighty interest in avoiding the types of safety risks that can arise from making disclosures beyond those required by Rule 16, as well as *Giglio v. United States*, 405 U.S. 150, 154 (1972), *Brady v. Maryland*, 373 U.S. 83 (1963), and their progeny. *See United States v. Gotti*, No. 02 Cr. 743, 2004 WL 32858, at *9 (S.D.N.Y. Jan. 6, 2004) (denying disclosure of the identities of co-conspirators, witnesses, and victims because the "Government has a legitimate concern about the safety of those individuals it intends to call at trial"). Detailed inquiries into the Government's evidence pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, long in advance of trial, unduly restrict the Government in presenting additional proof and argument to the jury based on resources devoted to trial preparation and the ongoing investigation in the time before the trial. *See, e.g.*, *United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993). Finally, "[t]he danger of defendants tailoring their testimony to explain away the Government's case, which has been disclosed in advance, is not unreal." *United States v. Cimino*, 31 F.R.D. 277, 279 (S.D.N.Y. 1962).

B.  **Discussion**

1.  **The Defendants Have Been Provided with More Than Enough Information**

Public documents and discovery materials provide the defendants with more than enough information to prepare for trial. They have been informed of the identities of several co-conspirators, the general locations of the alleged conduct, and public testimony describing the defendants' involvement in the drug-trafficking scheme that included details about the possession of weapons in connection with that scheme. In addition, the Government will disclose witness statements in advance of trial in accordance with the practice of this Court and the law of this Circuit.

The defendants are on notice that the Government believes that their former co-conspirators include Don Amado and Don Fernando because they are charged alongside the defendants in the publicly filed Indictment. (Dkt. No. 120.) Beyond the Indictment, the defendants are also on notice of the Government's position that they are co-conspirators of others charged in other indictments on this docket, including Tony Hernandez (S2 Superseding Indictment), whose public trial outlined significant criminal activity by the defendants.

Because of the trial testimony and discovery from the trails against Tony Hernandez and Geovanny Fuentes Ramirez, the defendants are in possession of extensive information about the charged conspiracy and the Government's proof of that conspiracy. Particularly pertinent is Ardon's identity as a cooperating witness against them, before a trial date is even set. Moreover, there is a significant amount of Jencks Act and *Giglio* material relating to Ardon in the public domain as a result of the Tony Hernandez trial, including a transcript of his multi-day testimony and his cooperation agreement. This trial testimony, which describes many aspects of the defendants' participation in the narcotics trafficking and firearms offenses, as well as the locations

of that conduct, has been available to the defendants since they learned about the instant charges in advance of their surrender, and places them in a strong position to investigate. *See, e.g.*, *United States v. Columbo*, No. 04 Cr. 723, 2006 WL 2012511, at *6 (S.D.N.Y. July 18, 2006) (denying request for bill of particulars in case with voluminous discovery because defendants had time before trial to review material); *United States v. Szur*, No. 97 Cr. 108, 1998 WL 132942, at *12 (S.D.N.Y. Mar. 20, 1998) (denying request for bill of particulars based, in part, on "ample time to review that discovery").

Although the Government has declined to provide Jencks Act material before a trial date is even set, the Government intends to provide Jenks Act material 30 days in advance of trial. Such a commitment further ensures that there will be no "prejudicial surprise at trial and give[s] [the] defendant[s] sufficient information to meet the charges against [them]." *Wedd*, 2016 WL 1055737, at *3; *see also United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir.), *modified*, 801 F.2d 378 (11th Cir. 1986) (finding no error in denying a bill of particulars "because the trial record indicates that [the defendant] was in possession of the Jencks material and tape recordings of [a Government cooperator] several weeks in advance of his testimony").

In similar circumstances, courts presiding over large-scale drug trafficking cases have routinely denied similar motions for bills of particulars where the discovery and other materials provided the defendant with adequate notice. *See*, *e.g.*, *United States v. Lobo, et al*, 15 Cr. 174, 2017 WL 1102660, at *1-2 (S.D.N.Y. Mar. 22, 2017); *United States v. Campo Flores*, 15 Cr. 765, 2016 WL 5946472, at *11 (S.D.N.Y. Oct. 12, 2016); (*see also* Dkt. 70 at 10 (denying motion for bill of particulars)). In *Lobo*, Judge Schofield denied a motion for a bill of particulars despite the fact that, similar to the Indictment here, the cocaine-importation conspiracy charge spanned approximately 10 years. *See* 2017 WL 1102660, at *2 ("Given the Superseding Indictment and the

9

Government's disclosures, Defendants have not justified the need for the broad-ranging demands in their respective motions."). The decisions in *Lobo* and *Campo Flores* were correct because it is well-established that "[t]he prosecution need not particularize all of its evidence." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988).

### 2. The Defendants' Requests Do Not Justify a Bill of Particulars

The defendants' requests for particulars should be rejected. Both defendants principally request information about the date, place, and manner of firearms possession as well as the type of firearms possessed. The Indictment, however, identifies that the defendants possessed, and aided and abetted the possession of, machine guns and destructive devices. (Dkt. 120 at 4-5.) Additional disclosures are not required. *See, e.g.*, *United States v. Calvente*, No. 12 Cr. 732, 2013 WL 4038952, at *1 (S.D.N.Y. July 26, 2013) (denying a request for, among other things, the "dates, times, and locations" at which a defendant possessed a firearm); *United States v. Mason*, No. 06 Cr. 80, 2007 WL 541653, at *4-5 (S.D.N.Y. Feb. 16, 2007) (rejecting a request for, among other things, the "dates and places that [the defendant] possessed firearms, and the types of firearms [the defendant] possessed," and noting that such requests are "routinely den[ied]" (internal quotation marks omitted)).

In *United States v. Juan Antonio Hernandez Alvarado*, this Court denied a similar motion for a bill of particulars. There, Hernandez requested, among other things, "a description of how Hernandez used or carried machine guns as charged in Counts Two and Three, including the type of gun, dates, locations and relationship to a drug-trafficking crime." (Dkt. 54.) In denying the motion, this Court held,

> The number of cases in this district are many on denying bills of particulars. I've looked at the indictment and specifically with regard to Count Two, and it charges from at least in or about 2004 up to and including in or about 2016, the defendant, during and in relation

10

> to the drug trafficking crime for which he may be prosecuted, specifically Count One, he knowingly used and carried firearms in furtherance of such crime, knowingly possessed firearms, and aided and abetted the use, carrying, and possession of firearms, specifically machine guns. And then Count Three is a conspiracy count, running from 2004 to 2016. And in *Calavante*, [2013 WL 4038952,] which was a Judge Pauley case, the court denied particulars of the dates, times, and locations that each defendant possessed firearms. The court denied particulars of the dates and places of possession and types of firearms. And I'm not going to order it here because the defendant is on notice and, for double jeopardy purposes, knows that the government has charged the possession of firearms in connection with the drug trafficking conspiracy in Count One, knows the "on or about" dates, and that is all that's necessary.

(Dkt. 70 at 10.)

The defendants here have more notice about firearms possession in this conspiracy than did Tony Hernandez when the Court denied his motion. The defendants here have trial transcripts and discovery not available to Hernandez, from both the Hernandez and Fuentes Ramirez trials, illuminating both the narcotics conspiracy charged in Court One of the S5 Superseding Indictment and the weapons crimes charged in Counts Two and Three. These materials are particularly valuable for notice on Counts Two and Three, the charge alleging weapons possession and aiding and abetting weapons possession, and conspiracy to do the same, respectively. These discovery materials and transcripts elucidate, with respect to Count Three, some of the co-conspirators alleged to have participated in the firearms conspiracy, and, with respect to Count Two, instances of firearm possession from which the Government can argue that defendants had "advance knowledge that another participant in the crime would use or carry a machine gun or destructive device," as required for liability on Count Two. (Jury Instructions, *United States v. Juan Antonio Hernandez Alvarado*, Tr. 1245.)

In addition to the defendants' requests for date, place, and manner of firearms possession, Ronald Salguero also demands information about individuals with whom he "had direct contact in the commission of each [possession]" and the type and quantify of narcotics present during possession. (Dkt. 363 at 8-18.) "[A] defendant may not," however, "employ a bill of particulars as a general investigative tool." *United States v. Guerrero*, 669 F. Supp. 2d 417, 426 (S.D.N.Y. 2009). "In this circuit, demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied." *United States v. Santana*, No. 13 Cr. 147, 2015 WL 5781413, at *2 (S.D.N.Y. Oct. 1, 2015) (internal quotation marks omitted). This is especially true "[i]n the context of prosecutions of narcotics conspiracies," where "courts have consistently refused to grant a bill of particulars requesting the following kinds of information: (1) when the conspiracy was formed; (2) when the defendant joined the conspiracy; and (3) how the Government alleges the defendant performed acts in furtherance of the conspiracy." *United States v. Santiago*, 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001); *see also Campo Flores*, 2016 WL 5946472, at *11 (reasoning that that the Government had "no obligation" to provide the "when," "where," and "with whom" the defendants conspired).

Some of the defendants' arguments suggest that a driving factor behind their motions is the improper purpose of seeking early disclosure of Jencks Act material. For example, Ronald Salguero complains that the Government has not disclosed "debriefing notes or reports concerning government witnesses, even though they testified in public," (Dkt. 363 at 6-7), and Otto Salguero asserts that "there is no principled reason why the Government should not be required to provide additional details concerning when and where Alexander Ardon met with the Salgueros when weapons were allegedly possessed," (Dkt. 364 at 4.) As described above, however, the Government has good reason not to disclose Jenks Act material before a trial date has even been

set, including that there is no statutory basis for the defendants' request, to protect potential witnesses whose identities have not yet been publicly disclosed, and because the statements of Government witnesses implicate other individuals who have not yet been brought to justice. *Gotti*, 2004 WL 32858, at *9 (denying disclosure of the identities of co-conspirators, witnesses, and victims because the "Government has a legitimate concern about the safety of those individuals it intends to call at trial"); (*see also* Dkt. 70 at 11 (denying bill of particulars as to co-conspirators because "disclosure could undermine the integrity of the proceeding and put cooperating witnesses in jeopardy and raise a risk of witness tampering")). Because of these considerations, courts regularly deny demands for bills of particulars that are "nothing more than a request for a witness list." *United States v. Fruchter*, 104 F. Supp. 2d 289, 313 (S.D.N.Y. 2000). In this Circuit, "it is well-settled that the Government is 'under no obligation to give [a defendant] advance warning of the witnesses who would testify against him.'" *United States v. Delacruz*, No. 14 Cr. 815, 2015 WL 2211943, at *3 (S.D.N.Y. May 12, 2015) (quoting *United States v. Alessi*, 638 F.2d 466, 481 (2d Cir. 1980)); *see also United States v. Alessi*, 638 F.2d 466, 481 (2d Cir. 1980) ("[T]he prosecution [is] under no obligation to give [a defendant] advance warning of the witnesses who [will] testify against him."); *United States v. Freeman*, No. 18 Cr. 217, 2019 WL 2590747, at *3 (S.D.N.Y. June 25, 2019) ("A defendant is not entitled to the Government's witness list prior to trial."); *United States v. Castellaneta*, No. 06 Cr. 684, 2006 WL 3392761, at *2 (S.D.N.Y. Nov. 20, 2006).

### C. Otto Salguero's Request for *In Camera* Review Is Baseless

Finally, Otto Salguero requests that "the Court order the Government to also submit an under seal summary of the evidence admitted with respect to this issue before the grand jury that returned the Indictment in this case, so as to memorialize and preserve the factual record for

potential appellate review." Dkt 364 at 4-5. In support, Otto Salguero cites a speculative concern about constructive amendment of the Indictment. He cites no authority requiring or even allowing such a procedure. His argument should be rejected.

To prevail on a constructive amendment claim, a defendant must demonstrate that "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment." *United States v. Mollica,* 849 F.2d 723, 729 (2d Cir. 1988) (internal quotation marks omitted) (emphasis added). While the Second Circuit "views constructive amendment as a *per se* violation of the Grand Jury Clause requiring reversal, it has consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial." *United States v. D'Amelio*, 683 F.3d 412, 416-17 (2d Cir. 2012) (internal citations and quotation marks omitted). In the 924(c) context, notice is satisfied through language in the indictment of "the use of a firearm in connection with the . . . drug-trafficking enterprise and conspiracy." *United States v. Whyte*, 630 F. App'x 104, 108 (2d Cir. 2015).

When considering a constructive amendment claim, "[t]he extent to which a court . . . may look beyond the language of the indictment to consider the content of the grand jury proceedings is unclear." *United States v. Teman*, 465 F. Supp. 3d 277, 300 (S.D.N.Y. 2020) (alteration in original). Nonetheless, even if the Court were to consider evaluating the content of the grand jury proceedings, those proceedings are already preserved, as they were transcribed, and can be reviewed if and when the defense establishes that such relief is appropriate.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully submits that the Court should deny the defendant's Motions without a hearing.

Dated: New York, New York
September 9, 2021

                                    Respectfully Submitted,

                                    AUDREY STRAUSS
                                    United States Attorney for the
                                    Southern District of New York

By:     /s/
            Jason A. Richman
            Benjamin Woodside Schrier
            Kyle A. Wirshba
            Assistant United States Attorneys